# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Robert H., | ) |
|        Plaintiff, | )<br>)<br>) Case No.: 19-cv-50114 |
|        v. | )<br>) Mag. Judge Margaret J. Schneider |
| Andrew Saul,<br>Commissioner of Social Security, | )<br>)<br>) |
|        Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert H. appeals a denial of disability insurance benefits and supplemental security income. For the reasons set forth below, his motion for summary judgment, Dkt. 26, is granted and the Commissioner's motion for summary judgment, Dkt. 33, is denied. The decision of the Administrative Law Judge is reversed and the case is remanded.

## BACKGROUND

Plaintiff Robert H. ("Plaintiff") submitted applications for disability insurance benefits and supplemental security income on December 3, 2014, which were completed with the Social Security Administration on December 5 and December 18, 2014. R. 165-72. Plaintiff's claims were initially denied on April 15, 2015, and upon reconsideration on August 28, 2015. R. 76, 95. Following a hearing on October 27, 2016, Administrative Law Judge ("ALJ") Cynthia Bretthauer issued an opinion denying benefits on December 21, 2016. R. 33, 13. Plaintiff appealed the decision, and on March 20, 2018, the District Court remanded the case based on the parties' joint agreement to a voluntary remand. R. 660. The Appeals Council then vacated the case, suggesting that upon remand the ALJ develop the record concerning Plaintiff's alleged mental impairments and give further consideration to Plaintiff's residual functional capacity (RFC). R. 675.

On remand, the same ALJ held a second hearing on December 18, 2018. R. 627. Michael Carney testified as an impartial medical expert. *Id.* On January 16, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income prior to September 15, 2017. R. 617. The Commissioner further found that Plaintiff was disabled for purposes of these claims beginning on September 15, 2017. R. 616-17. Plaintiff now seeks judicial review of the ALJ's January 2019 decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

A. Medical Background

Plaintiff's medical issues primarily relate to pain that proved challenging to diagnose and prove by objective methods. In April 2015, Plaintiff reported groin pain and was using a cane to walk. R. 512. In August 2015, he experienced symptoms of arthritis, and was prescribed pain medication and told to decrease his Lipitor due to pain and weakness. R. 533-34. In September 2015, Plaintiff reported that he had pain in his thighs and calves, made worse by walking. R. 561. Notes from his September medical care state that any call received by Plaintiff was related to his pain, but also noted that he was "in no obvious distress." *Id*. In addition, he had anxiety and felt depressed. *Id*. In October 2015, Plaintiff said that he was frequently in pain and was experiencing tingling in his fingers and hands. R. 563. Physician Assistant (PA) Finnegan observed that when he got up from a seated position to walk across a room, it appeared like he was walking on hot coals. *Id*. His medical records stated he had polyarthralgia, but he did not yet require a walker. R. 564. PA Finnegan also noted that he was "not sure what is going on" and "[w]hether the pain is psychogenic or not is difficult to say." R. 563.

In November 2015, Plaintiff continued to report pain in his thighs, calves, shoulders, and arms, for which he was taking Norco and Gabapentin. R. 566. PA Finnegan noted that Plaintiff was walking and using a cane to get around. *Id*. In December 2015, he saw a rheumatologist for treatment of his arthritic pain in his feet, toes, legs, shoulders, hands, and fingers. R. 516-17. The rheumatologist noted that he was using a walker and concluded that there was no arthritis, based on the exam, and that a "fibromyalgia diagnosis fits best." R. 518 However, she noted that the diffuse pain from toes to fingertips was unusual, even for fibromyalgia. *Id.*

In May 2016, Plaintiff continued to report chronic pain in his abdomen, back, and legs. R. 568. He reported that he dreamt of killing his brother, and was assessed with chronic pain syndrome, anxiety, vertigo, and urinary urgency. R. 569. At that time, he was using a walker. *Id.* Between April and October 2016, Plaintiff sought mental health treatment. R. 576-95. His therapist noted that he had a fixed negative outlook and limited range of coping skills, and that he generally avoided people. *Id.* In August 2016, Plaintiff saw Dr. Habib, and continued to report that he had pain in his thighs, calves, shoulders, and arms, and continued to use a walker. R. 555-57. In October 2016, he was seen at a cardiology clinic for ongoing management of his cholesterol and he reported that his pain and heaviness in his legs continued, and that he was using a walker. R. 932-35.

At a medical appointment in February 2017, Plaintiff's listed diagnoses included chronic pain syndrome, chronic anxiety, and fibromyalgia. R. 957. An April 25, 2017 X-ray of his cervical spine showed cervical spondylosis and a lumbar X-ray confirmed lumbar spondylosis. R. 902, 904. In May 2017, Plaintiff reported that he had fatigue, back pain, weakness, headaches, sleep disturbance, and anxiety. R. 904. He requested a wheelchair but was told by PA Finnegan that it would be better not to use one so that he could retain more mobility and not become reliant on a wheelchair. R. 958. However, on September 15, 2017, Plaintiff was prescribed a wheelchair by PA Finnegan based on a diagnosis of chronic pain syndrome and lower extremity weakness.[1] R. 862. At a medical appointment on September 13, 2017, he stated that he could not stand for his

---

[1] The prescription has a 9/13/2017 date printed on it but is signed by PA Finnegan with a handwritten date of 9/15/2017. The ALJ relied on the 9/15/2017 date in her onset of disability finding.

2

exam because he did not have the strength or mobility to do so. R. 964. In October 2017, Plaintiff saw Dr. Kouimelis. He continued to complain of diffuse muscular pain and reported that he had been unable to walk for a few months. R. 968-69. An additional cervical MRI performed in November 2017 showed multilevel disc degenerative changes and a lumbar MRI confirmed two disc protrusions as well as a disc bulge. R. 972-73.

B. The ALJ's Decision

At the second hearing on December 18, 2018, Plaintiff testified that his pain had worsened and that he was using a walker so that he did not fall over. R. 640. He testified that his doctor referred him to physical therapy, but he only went to one session due to a lack of insurance coverage. R. 635. Plaintiff further testified that he had switched doctors because his last doctor told him that there was nothing else that could be done for him aside from a functional capacity evaluation that was not covered by insurance. R. 636-37. Plaintiff also said that he stopped mental health treatment because his insurance would not cover it. R. 638. Plaintiff also testified that he had switched his medication to Lyrica. R. 639. He told the ALJ that he had anger issues and dreamed of harming his brother. R. 641. Psychologist Michael Carney testified as the impartial medical expert who reviewed Plaintiff's medical records. His testimony focused on mental health and did not include any reference to plaintiff's medical complaints regarding physical pain. R. 643-46. He testified that Plaintiff should be limited to simple and routine work. R. 646.

Approximately one month later, the ALJ issued her ruling, finding that Plaintiff did not qualify as disabled prior to September 15, 2017. The ALJ relied on largely the same evidence and rationales as she did in her first ruling. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset disability date to his date last insured. R. 603. At step two, the ALJ found the following severe impairments: "myalgia/arthralgias; fibromyalgia; and depression." *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets the severity of one of the listed impairments. R. 605. Specifically, the ALJ found that Plaintiff did not meet the requirements of Listings 1.00, 1.02, 1.04, 11.04, 14.09, and SSR 12-2p. R. 606. Regarding her analysis of Plaintiff's fibromyalgia, the ALJ stated that the records failed to document loss of musculoskeletal function or motor function, central nervous system dysfunction, or dysfunction in the immune system that rose to the listing level severity. R. 605.

The ALJ proceeded to step four where she found that Plaintiff had an RFC to perform medium work prior to September 15, 2017 (the date Plaintiff was given a prescription for a wheelchair), and light work thereafter. R. 606-615. The ALJ found that Plaintiff had been unable to perform any past relevant work. R. 615. At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed prior to September 15, 2017. R. 616.

In her decision, the ALJ reviewed several medical opinions. She gave the opinions of the state agency medical consultants Victoria Dow, M.D. and L. Zuniga, M.D., little weight as they did not conduct a completed file review in determining that Plaintiff's impairments were not severe. R. 612. The ALJ also gave limited weight to the opinion of Plaintiff's treating physician Edward Pyun, Jr., who opined in September 2014 that Plaintiff was unable to work at that time,

3

because he provided only "a temporary restriction following claimant's diverticulitis surgery." R. 613. Meanwhile, she gave great weight to the opinion of Dr. Carney, the expert who testified at the hearing. The ALJ found that Dr. Carney stated that there was minimal mental health treatment in the record, and that Plaintiff did not meet or equal any listing related to mental health. R. 613. The ALJ assigned his opinion "great weight because he had the opportunity to listen to the claimant's testimony, review the entirety of the longitudinal record, testify from a completely neutral and independent position, and render an opinion well within his medical expertise." *Id*.

In considering Plaintiff's RFC, the ALJ found that "[w]hile the claimant and his representative consistently argue that the records show the need for a cane, walker, and then eventually a wheelchair, the actual objective medical examinations fail to document clinical signs and observation." R. 611. The ALJ stated that "[a]t the remand hearing, the claimant testified that he is using a walker because he has pain throughout his whole body, but later says he needs the walker for balance." R. 607. The ALJ noted that while the records documented that Plaintiff was approved for 8 physical therapy sessions in 2018, he stated that his insurance would not cover it. *Id*. The ALJ also noted that Plaintiff did not have a mental health treatment source and pointed out that even though he had scheduled an appointment for counseling in November 2016, he claimed that his insurance would not cover any more visits and he did not avail himself of free or low-cost mental health treatment. *Id*.

The ALJ also found Plaintiff's statements about his symptoms to be inconsistent, "because prior to the established onset date the records largely document treatment by a physician's assistant whose physical examinations documented minimal abnormalities and whose treatment rendered was routine." R. 608. The ALJ found that he was seen by Dr. Kouimelis on the alleged onset date for an annual physical, where he complained of continuous pain in his thighs, calves, shoulders, and arms, but admitted that medication did help to control the pain. *Id*. In addition, the doctor's physical exam did not document abnormalities even though he prescribed medications as well as a walker. *Id*. Further, a few weeks after the onset date, Plaintiff saw a rheumatologist for his pain and he was noted as using a cane despite the prescription for a walker. *Id*. The rheumatologist noted that he did not have "synovitis, pain, or impaired range of motion" and he did not appear to be in distress. *Id*. The rheumatologist diagnosed Plaintiff with fibromyalgia but did not recommend narcotics for fibromyalgia. *Id*. The ALJ also noted that the rheumatologist recommended an exercise class which Plaintiff did not attend, and that Plaintiff failed to follow up with this or any other rheumatologist. *Id*.

The ALJ went on to find that Plaintiff's future care was handled by either a nurse practitioner in the lipid clinic or the PA in the primary care clinic and that subsequent records documented similar clinical findings. The ALJ found that all of this supported her decision that Plaintiff was not disabled prior to September 15, 2017. R. 611.

## STANDARD OF REVIEW

A reviewing court may enter judgment either "affirming, modifying, or reversing the decision of the [ALJ], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The ALJ's factual findings are conclusive if they are supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson v. Perales*, 402 U.S. 389, 399-401

(1971) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The reviewing court "is not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Notwithstanding, the Seventh Circuit urges that this review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Rather, a reviewing court should conduct a critical review of the evidence prior to affirming the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). In addition, the decision will not be affirmed where the ALJ does not build a logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Federal courts may not build a logical bridge on behalf of the ALJ. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

## DISCUSSION

Plaintiff raises several arguments related to the ALJ's RFC evaluation: (1) the ALJ erred by "playing doctor" in various ways; (2) the ALJ erred in failing to obtain an updated medical opinion; and (3) the ALJ improperly evaluated his symptoms of severe pain and inability to walk. Upon review, the Court finds that a remand is warranted because the ALJ played doctor in too many instances and should have sought the assistance of an expert.

ALJ's cannot reliably interpret technical medical records or make their own diagnoses. The ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *See, e.g., Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Notwithstanding, the Seventh Circuit has affirmed ALJ's in some cases where ALJ's evaluated medical records. *See, e.g., Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017); *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). In those cases, however, the ALJs were merely summarizing the evidence rather than interpreting it to reach a diagnosis that differs from the one made by the doctors.

Here, two important facts underlie Plaintiff's doctor-playing argument. First, the ALJ did not call a medical expert at the hearing who could opine as to Plaintiff's physical impairments. Second, the ALJ rejected the opinions of the State agency doctors since they did not conduct a completed file review.[2] Thus, the ALJ unavoidably analyzed the evidenced based on her layperson judgment. The relevant question is whether the ALJ's doctor playing could be considered harmless.

Plaintiff's doctor-playing argument is strongest when considered in relation to the credibility analysis of Plaintiff and the analysis of the medical opinions. For example, the ALJ's credibility analysis consisted of finding that Plaintiff's statements concerning his symptoms were inconsistent because they changed after the alleged onset date. The ALJ stated: "[C]laimant's statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because prior to the established onset date the records largely document treatment by

---

[2] The State agency doctors rendered their opinions in April and August 2015, over a year before the hearing and before additional medical evidence was submitted. R. 65-66, 82-83.

a physician's assistant whose physical examinations documented minimal abnormalities and whose treatment rendered was routine, conservative, and generally consisted of medication refills and continuous recommendations to stay active." R. 608. However, the ALJ failed to explain how such findings of "minimal abnormalities" prior to the alleged onset date invalidate Plaintiff's statements concerning his symptoms as they developed and became severe.

The ALJ also relied too heavily on a lack of objective evidence. The ALJ noted, for example, "Subsequent records document similar clinical findings . . . He had no deformities, clubbing, cyanosis, erythema, or edema on his back or extremities. . . In August 2016, at an appointment with a physician . . . [w]hile the claimant complained of pain . . . all over his body . . . the doctor observed that the claimant did not appear in acute distress." R. 609. Later in her ruling the ALJ continued with the same rationale, stating:

> Even as of the established onset date, the claimant's treating physician's assistant noted that there was no synovitis in the extremities and "no findings of atrophy from disuse," which would lend considerable support to the claimant's allegations of pain and inability to move, walk, or do much other than lie in bed all day long watching television . . . if the claimant were truly as limited, immobile, unstable, or bedridden as he has claimed, the evidence would be replete with notes about falls, atrophy, muscle wasting, evidence of bed sores or pressure ulcers, and/or swelling/edema due to fluid build up in the muscle tissue.

R. 612. The ALJ's rationale in discrediting Plaintiff was that the objective evidence was minor. This rationale rests on the assumption that Plaintiff would not have had the degree of pain alleged without greater objective evidence. However, this assumption is not always true, particularly with fibromyalgia.

"Fibromyalgia is diagnosed primarily based on a patient's subjective complaints and the absence of other causes for complaints." *Harbin v. Colvin*, 2014 WL 4976614, at *5 (N.D. Ill Oct. 6, 2014). "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *see also Michael N. v. Saul* 2021 WL 1172743, at *5 (N.D. Ill. March 29, 2021). Given the complexity of properly assessing fibromyalgia, it is recommended that an ALJ use a medical expert familiar with fibromyalgia when a claimant makes a credible claim of fibromyalgia or properly explain the choice not to do so to allow the Court to review it. *See, e.g., Michelle M. v. Saul*, No. 18 C 50003, 2019 WL 6609425, at *5 (N.D. Ill. Dec. 5, 2019); *Stokes v. Astrue*, No. 9 C 972, 2010 WL 3326803, at *8 (S.D. Ind. Aug. 23, 2010). Here, the ALJ provided a chronology of Plaintiff's treatment but may have used the wrong criteria in evaluating it, such as the lack of objective findings the ALJ cited concerning Plaintiff's gait, muscle strength, lack of sores, etc. The Court cannot make any definitive judgments in this regard, but merely finds that the ALJ needs an evaluation from a medical expert to ensure that the conclusions regarding the medical evidence are fair. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an administrative law judge may not deny benefits on the sole

ground that there is no diagnostic evidence of pain"); *Michelle M.*, 2019 WL 6609425, at *16 ("even if the ALJ's evaluation of the objective evidence was valid, the ALJ was required to have at least another rationale to support a credibility finding.").

Another rationale given by ALJ for denying benefits was that Plaintiff should have pursued additional treatment for his conditions. *See, e.g.,* R. 608 ("[T]he doctor specifically recommended an exercise class at the YMCA called 'Joyful Joints' . . . [claimant] did not attend the YMCA class."); R. 610 ("Regarding the claimant's mental impairments, during the period at issue, the medical evidence contains little to no record of mental health or psychiatric care or evaluation prior to April 2016, when the claimant completed a mental health assessment."); R. 611 (Plaintiff's "practitioner generally refills the same medications and objective examinations fail to reflect significant abnormalities to support deterioration or worsening of the claimant's impairments."). While course of treatment is a valid factor to consider, *see* SSR 16-3p (S.S.A. Mar. 16, 2016) (factors 4-6), the ALJ's analysis rested too heavily upon medical assumptions about what treatment options were correct or available for Plaintiff. The ALJ appeared to think that further effective treatment would be available for a patient experiencing fibromyalgia, but, again, this is not always true. *Id.* ("A medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual.");*see also Michelle M.*, 2019 WL 6609425, at *6 (finding that this possibility has been noted specifically for fibromyalgia) (citing to the Mayo Clinic Website, "Fibromyalgia: Treatment" ("The emphasis is on minimizing symptoms and improving general health. No one treatment works for all symptoms."). The Court finds this rationale was not sufficiently supported by the record. A medical expert may have been able to opine on these issues as well.

The Commissioner argues that these are not flaws in the ALJ's decision, but rather the fault of the Plaintiff, because it is his burden to provide evidence of his disability. In effect, the Commissioner is arguing that the ALJ's analysis was harmless error. *See Dock v. Berryhill*, No. 16 C 50277, 2017 WL 5293901, at *16 (N.D. Ill. Nov. 13, 2017). An error is harmless only when a court can "predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, the Court cannot make such a prediction because there is evidence that Plaintiff's impairments could change the RFC analysis. For example, the ALJ found that Plaintiff was able to perform medium work prior to September 15, 2017 and light work thereafter. Plaintiff disputes that he could perform the lifting and carrying requirements of his RFC. The Court agrees that the record contains evidence that may support a finding that Plaintiff's fibromyalgia prevents him from performing lifting and carrying. In addition, even the light work RFC required Plaintiff to sit for 6-8 hours and to stand/walk for at least 6 hours. There is ample record evidence that Plaintiff would not be able to perform those requirements.

The above conclusions are sufficient to order a remand, such that the Court need not address Plaintiff's remaining arguments in depth. The Court notes, however, that Plaintiff has raised some valid concerns regarding the ALJ's rejection of the Plaintiff's assertions regarding his need for a cane, walker, or wheelchair. Here, too, the doctor-playing issue is at play. For example, the ALJ assumed that Plaintiff's acclaimed need for a wheelchair was inconsistent, since the record was not replete with notes about falls, muscle atrophy, or bed sores. R. 612. It is unclear whether these assumptions are medically grounded. On remand, the ALJ should call a medical expert to

address the above issues as well as others not addressed in herein. In remanding this case, the Court is not indicating that the ALJ must rule a particular way or that the ALJ's current rationales, if supported by an appropriate medical opinion and made after a fair review of the factual record, could not be relied upon to support a finding that plaintiff was not disabled.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, the decision of the ALJ is reversed, and the case is remanded.

Date: July 9, 2021  ENTER:

*Margaret J. Schneider*
_____
United States Magistrate Judge